## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIC OTTEMANN, an individual, on behalf of himself and the proposed class;<br><br>   Plaintiff,<br><br>  vs.<br><br>KNIGHTS OF COLUMBUS, a Connecticut corporation;<br><br>   Defendant. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

ERIC OTTEMANN, an individual ("Plaintiff" or "Mr. Ottemann"), on behalf of himself and all others similarly situated, brings this action against Defendant, KNIGHTS OF COLUMBUS ("Defendant" or "Knights of Columbus"), a Connecticut corporation, and alleges on information and belief as follows:

### JURISDICTION & VENUE

1. This Court has original subject matter jurisdiction under 18 U.S.C. § 1332(a), because Plaintiff is a Louisiana citizen and seeks recovery of more than $75,000, exclusive of interest and costs, and Defendant is a citizen of Connecticut, as it is a corporation incorporated in Connecticut, and headquartered in Connecticut.

2. Venue is proper in this court pursuant to 28 U.S.C. §§ 1391 and 1400 because, Defendant conducts business in this District and a substantial part of the events and omissions giving rise to the claims occurred in this judicial District and have caused damage to Plaintiff in this District.

1

## PARTIES

3. Plaintiff Eric Ottemann is and at all relevant times was a resident and domiciliary of the State of Louisiana.

4. Defendant, Knights of Columbus is a Connecticut corporation, incorporated in Connecticut, headquartered in Connecticut, doing business, organizing, and existing in Connecticut.

## INTRODUCTION

5. Defendant is a Catholic fraternal society that sells billions of dollars of insurance to Catholics across the nation. To accomplish this, Defendant leans on over a thousand hard-working insurance agents to sell its products.

6. Defendant refers to its lowest-level employees as "field agents" working under a local "general agent." The general and field agents sell Defendant's insurance products in an assigned "territory," under the policies and strict control of Defendant. Defendant denies these employees, including Plaintiff Eric Ottemann, access to critical benefits and protections they are entitled to by law, such as indemnification for business expenses.

7. Defendant assigns these field agents and general agents to a "territory" and controls all of the key aspects of their working lives.  Therefore, agents such as Plaintiff should be paid and classified by Defendant as employees.  But Defendant, instead, has intentionally and systematically misclassified all agents as independent contractors. In doing so, Defendant denies these employees, including Plaintiff, access to critical benefits inherent in an employer/employee relationship. Through its willful misclassification, Defendant also robs the federal and state governments of tax revenues, generates losses to state unemployment insurance and workers' compensation funds, and gains an undue advantage over its law-abiding competition.[1]

---

[1] *See* U.S. Dept. of Labor, Wage and Hour Division, "Misclassification of Employees as Independent Contractors," available at

## ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

8. Mr. Ottemann began working for Defendant on July 10, 2006, as a field agent (selling life insurance) after signing a written employment contract. A true and correct copy of that contract is attached hereto as Exhibit A. On February 12, 2007, Defendant sent an internal communication to Mr. Ottemann's supervisor stating it believed Mr. Ottemann was working with another insurance company, and that his supervisor needed to ensure that Mr. Ottemann cancelled any remaining appointments with other insurance companies. A true and correct copy of this correspondence is attached hereto as Exhibit B. Mr. Ottemann was thereafter forced to send letters of resignation stating he was "a captive agent for the Knights of Columbus."

9. In late 2012, Mr. Ottemann accepted a promotion to a supervisory position in New Orleans based on Defendant's oral representations, despite never being provided a written contract. Mr. Ottemann was told that he needed to move from Texas to Louisiana before he would receive his written contract. Mr. Ottemann and his family moved to Louisiana shortly before Christmas in 2012.

10. On January 17, 2013, Mr. Ottemann was finally presented with a written contract outlining his promotion to General Agent of the "Southeast Louisiana Territory." A true and correct copy of that contract is attached hereto as Exhibit C ["General Agent Agreement"]. Mr. Ottemann was told that he needed to sign it and return it by the next day.

11. When Mr. Ottemann asked Defendant's "Field Director" Ramon Ramos to explain the General Agent Agreement, Mr. Ramos stated, "I never understood mine, talk to [Defendant's Vice President Joe Martinez], that's his job, if you don't sign it, you won't get paid." Mr. Ottemann attempted to reach Mr. Martinez that day but received no response. As Mr. Ottemann had moved his family

---

https://www.dol.gov/whd/workers/Misclassification/ (describing the repercussions of misclassification) (last accessed December 17, 2018).

3

over 1,000 miles to accept this promotion, he signed the contract without ever having the opportunity to have it explained.

12. After four months as a General Agent, Mr. Ottemann saw Mr. Martinez at an "incentive trip" he was attending with his wife. When Mr. Ottemann asked Mr. Martinez about the details of his contract, Mr. Martinez told him to go back and speak with Mr. Ramos, as "That's his job." When Mr. Ottemann informed Mr. Martinez that Mr. Ramos did not understand the contract himself, Mr. Martinez said he would speak to Mr. Ramos and get back to Mr. Ottemann. This never happened. The next time he raised the issue with Mr. Martinez, Mr. Martinez offered to demote Mr. Ottemann to field agent if he preferred but stated that he would need to stay in Louisiana or pay to move himself back to Texas.

13. Over the next year Mr. Ottemann was one of Defendant's top 20 General Agents. When Mr. Ottemann took over the Southeast Louisiana "territory," it was ranked 143 out of 152 of all of Defendant's branches. However, Mr. Ottemann was forced to spend tens of thousands of dollars to cover Defendant's costs of doing business in the Southeastern Louisiana territory. Mr. Ottemann has never been reimbursed for these business expenses.

14. Mr. Ottemann eventually learned that he was being held responsible for underperforming agents who took out advances from Defendant, who he neither had the ability to personally vet prior to hiring, nor power to terminate. Debts owed by these employees to Defendant were directly deducted from Mr. Ottemann's commissions. Due to this issue, among others, Mr. Ottemann was forced to resign from his position with Defendant.

15. Defendants ultimately deducted over $100,000 from Mr. Ottemann's earned commissions in this manner. This practice continued even after Mr. Ottemann's resignation. For example, Mr. Ottemann received a letter after his resignation on December 15, 2015, holding him responsible for over $30,000 in debt

of one of Defendant's employees. A true and correct copy of that letter is attached hereto as Exhibit D.

## CLASS ALLEGATIONS

16. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

17. Plaintiff brings this action on behalf of himself and all other similarly situated persons as a Class action under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

18. **Class Period.** The Class Period shall be defined as: from six years preceding the date that the first Complaint in this action is filed, until the full resolution of this action, plus any time that may be attributed to equitable tolling.

19. **Class Definition.** The Class is defined as:

> *All persons who, during the Class period, worked as General Agents for Defendant outside the State of California.*

20. Members of the Class will be collectively referred to as the "Class." The Class does not include Defendant, its officers, and/or its directors; the Judge to whom this case is assigned; or the Judge's staff.

21. Plaintiff reserves the right to amend the above Class and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

22. **Numerosity.** The potential members of the Class as defined are so numerous that joinder of all the members is impracticable. While the precise number of Class members has not been determined, Plaintiff is informed and believes that there are dozens of general agents in the class. Defendant has access to data sufficient to identify the members of the Class.

23. **Adequacy of Representation.** The named Plaintiff is fully prepared to take all necessary steps to fairly and adequately represent the interests of the Class

defined above. Plaintiff's attorneys are ready, willing, and able to fully and adequately represent the Class and individual Plaintiff. Plaintiff's attorneys are highly experienced in employment Class action litigation. Plaintiff intends to prosecute this action vigorously.

24. **Common Questions of Law and Fact.** There are predominant common questions of law and fact and a community of interest amongst Plaintiff's and the claims of the Class concerning:

 a. Whether Defendant misclassified Plaintiff and other members of the Class as "independent contractors" instead of employees;

 b. Whether Defendant imposed business expenses on the members of the Class and then failed to reimburse the Class members for those expenses;

 c. Whether Defendant deducted wages from Plaintiff and other members of the Class in violation of Connecticut law;

 d. Whether Defendant failed to provide commissions owed under the General Agent agreements;

 e. Whether Defendant's policies and practices breached the employment contracts it signed with its General Agents;

 f. Whether Defendant's policies and practices relating to its General Agents violated the covenant of good faith and fair dealing implied in Defendant's employment agreements with Plaintiff and the Class

 g. Whether Defendant was unjustly enriched by imposing business expenses on Plaintiff and the class and failing to reimburse them; and

 h. Whether Defendant engaged in business practices or acts in violation of the Connecticut Unfair Trade Practices Act.

i. **Typicality.** The claims of Plaintiff are typical of the claims of all members of the Class because Defendant applied and continues to apply its illegal

6

pay practices to all General Agents.

25. **Superiority of a Class Action.** A Class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery due to Defendant's conduct described in this Complaint. A Class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiff is unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a Class action.

## FIRST CAUSE OF ACTION

**Action to Collect Wages**
**(Conn. Gen. Stat. §§ 31-71(e), 31-72)**
**Brought By Plaintiff, On Behalf of Himself and the Proposed Class**

26. Plaintiff incorporates by reference every allegation contained above.

27. Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

28. Plaintiff entered into the General Agent Agreement with Defendant, attached hereto as Exhibit C. Plaintiff is informed and believes that the Class entered into the same agreement.

29. Plaintiff and the Class tendered performance under the terms of the General Agent Agreement, entitling them to earned commissions.

30. Specifically, Sections 7, 8, and 13 of the General Agent Agreement describe Plaintiff's commissions, as does the Schedule of Commissions and Expense Allowance ["Schedule"] incorporated into the General Agent Agreement. Plaintiff earned overwriting commissions, quality production commissions, and other commissions on insurance products sold by or credited to Plaintiff. The procedure

7

for calculating these commissions is described specifically in the Schedule.

31. Defendant failed to pay Plaintiff and the Class all of the commissions they had earned, including electing to reduce or withhold some commissions as alleged chargebacks.

32. Plaintiff and the Class did not provide authorization for this withholding of his wages on a form approved under applicable Connecticut law.

33. In committing this conduct, Defendant directly and proximately damaged Plaintiff and the Class, as described above, by denying them earned commissions.

34. Plaintiff seeks double damages, costs, and reasonable attorney's fees pursuant to Conn. Gen. Stat. § 31-72.

## SECOND CAUSE OF ACTION

### Action to Collect Unreimbursed Expenses
### (Conn. Gen. Stat. §§ 31-71(e), 31-72)

**Brought by Plaintiff, On Behalf of Himself and the Proposed Class**

35. Plaintiff incorporates by reference every allegation contained above.

36. Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

37. Plaintiff entered into the General Agent Agreement with Defendant, attached hereto as Exhibit C. Plaintiff is informed and believes that the Class entered into the same agreement.

38. Defendant has failed to reimburse Plaintiff and the Class for their employment-related expenses for the benefit of Defendant, including, but not limited to: computer equipment and office supplies, phone and internet service, insurance, and advertising.

39. Plaintiff and the Class did not provide authorization for this withholding or diversion of their wages on a form approved under applicable Connecticut Law.

40. In committing this conduct, Defendant directly and proximately damaged Plaintiff and the Class, as described above, by failing to reimburse Plaintiff for business expenses.

41. Plaintiff seeks double damages, costs, and reasonable attorney's fees pursuant to Conn. Gen. Stat. § 31-72.

## THIRD CAUSE OF ACTION
### Fraudulent Misrepresentation
### Brought by Plaintiff, On Behalf of Himself

42. Plaintiff incorporates by reference every allegation contained above.

43. Plaintiff was purportedly hired by Defendant to work as a non-employee with the freedom to "exercise independent judgment" pursuant to the terms of the General Agent Agreement described here. In fact, Defendant knew or should have known, at all times, that the non-employee classification in the General Agent Agreement was improper and that Plaintiff was an employee entitled to the benefits and protections of all laws enacted for employees.

44. Plaintiff is informed, and on that basis alleges, that through the General Agent Agreement Defendant intentionally misled Plaintiff as to his employment status or made such representations to Plaintiff recklessly and/or negligently, and deliberately concealed from and/or failed to disclose to Plaintiff the extent of control Defendant would exercise over Plaintiff.

45. Defendant substantially controlled and directed Plaintiff's pay and performance of his work. Specifically:

   i. Plaintiff's employment contract prohibited him from selling insurance outside of Defendant's employ, or via his own entity. In fact, Plaintiff was prohibited from holding *any* other jobs whatsoever. The General Agent Agreement, rather, required that the Plaintiff "devote his full time and entire attention and energy

     to the services required under the [General Agent] Agreement, and he shall not engage in any other occupation or business."

  ii. Plaintiff's General Agent Agreement also dictated the insurance products that Plaintiff was allowed to sell. He was only allowed to sell the precise products that Defendant let him sell.

  iii. Plaintiff's General Agent Agreement also set the territory in which Plaintiff was authorized to sell insurance. Plaintiff and the Class were not authorized to solicit business outside of their set territory and, furthermore, Defendant could unilaterally change or revoke the territory "at any time."

  iv. The contract also dictated the pay the general agents received from selling Defendant's insurance products. The commission structure was uniform across all general agents, set by contract, and presented on a take-it-or-leave-it basis, and Plaintiff was given one day to decide whether to accept the contract.

46. Further, selling life insurance is directly within Defendant's line of business. Indeed, Defendant could not complete its core mission—to sell insurance—without the general agents.

47. In addition, insurance agents are not generally engaged in an independent business. Rather, life insurance providers customarily employ in-house insurance agents.

48. The General Agent Agreement defined Plaintiff as a non-employee for the purpose of realizing unjust profits from Plaintiff's work and/or to avoid paying for Defendant's operating costs in order to increase its competitiveness.

49. At all material times, Defendant knew or should have known that the material misrepresentations made to Plaintiff in the General Agent Agreement concerning his employment status, and the concealment and/or nondisclosure of

material facts to Plaintiff regarding his employment status and Plaintiff's corresponding obligations to assume responsibility for all his own employment-related expenses, including but not limited to: computer equipment and office supplies, phone and internet service, insurance, and advertising, were false and fraudulent.

50. At all material times, Defendant intended to and did induce Plaintiff to justifiably rely to his detriment on the false and fraudulent representations made to him by Defendant in the General Agent Agreement concerning Plaintiff's employment status and obligation to assume responsibility for all employment-related expenses including, but not limited to: computer equipment and office supplies, phone and internet service, insurance, and advertising, and therefore, Plaintiff suffered damages as a direct and proximate result.

51. Plaintiff is informed and believes, and thereon alleges, that Defendant's conduct was outrageous, and Defendant committed the acts alleged here maliciously, fraudulently, and oppressively, with the intent to injure Plaintiff. Defendant acted with evil motive amounting to malice, in conscious disregard of Plaintiff's rights, or with reckless indifference. As such, Plaintiff is entitled to recover punitive damages.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### Brought By Plaintiff, On Behalf of Himself and the Proposed Class

52. Plaintiff incorporates by reference every allegation contained above.

53. Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

54. Plaintiff entered into the General Agent Agreement with Defendant, attached hereto as Exhibit C. Plaintiff is informed and believes that the Class entered into the same agreement.

55. Plaintiff and the Class tendered performance under the terms of the

General Agent Agreement, entitling them to earned commissions.

56. Specifically, Sections 7, 8, and 13 of the General Agent Agreement describe Plaintiff's commissions, as does the Schedule of Commissions and Expense Allowance ["Schedule"] incorporated into the General Agent Agreement. Plaintiff earned overwriting commissions, quality production commissions, and other commissions on insurance products sold by or credited to Plaintiff. The procedure for calculating these commissions is described specifically in the Schedule.

57. Defendant breached the General Agent Agreement by failing to pay Plaintiff and the Class all of the commissions they have earned, including electing to reduce or withhold some of their commissions as alleged chargebacks.

58. In committing this conduct, Defendant directly and proximately damaged Plaintiff and the Class, as described above, by denying him income that he has earned and otherwise would have earned as a general agent for Defendant.

## FIFTH CAUSE OF ACTION

**Breach of the Covenant of Good Faith and Fair Dealing**

**Brought By Plaintiff, On Behalf of Himself and the Proposed Class**

59. Plaintiff incorporates by reference every allegation contained above.

60. Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

61. In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

62. Defendant violated that covenant.

63. Defendant and Plaintiff entered the General Agent Agreement. Plaintiff is informed and believes that Defendant entered into the same agreement with the Class.

64. Plaintiff and the Class performed all the significant things that the

contract required them to do. The conditions for Defendant to perform its obligations on the contract had occurred.

65. However, Defendant unfairly interfered with Plaintiff and the Class's ability to receive benefits of the General Agent Agreement, specifically by committing at least the following acts:

    a. Refusing to pay Plaintiff and the Class commissions they has earned pursuant to the General Agent Agreement; and

    b. Reducing or withholding some of Plaintiff and the Class's earned commissions as alleged chargebacks.

66. In committing this conduct, Defendant directly and proximately damaged Plaintiff and the Class, as described above, by denying him income that he otherwise would have earned as a general agent for Defendant.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

### Brought By Plaintiff, On Behalf of Himself and the Proposed Class

67. Plaintiff incorporates by reference every allegation contained above.

68. Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

69. As described here, Defendant's conduct in enticing Plaintiff and the Class to provide materials and services, including, but not limited to, computer equipment and office supplies, phone and internet service, insurance, and advertising through false and misleading statements, representations, and omissions as described here is unlawful because the statements are untrue.

70. Plaintiff and the Class would not have provided the materials and services if the true facts had been known, or would not have paid the price he did.

71. Plaintiff and the Class conferred benefits on Defendant by providing the materials and services. Defendant has been unjustly enriched at the expense of

13

Plaintiff and the Class as a result of their unlawful conduct alleged here, thereby creating a quasi-contractual obligation on Defendants to restore these ill-gotten gains to Plaintiff and the Class.

72. Further, as alleged here, Defendant has accepted and retained monies owed to Plaintiff and the Class as commissions pursuant to the General Agent Agreements.

73. Defendant has thus been unjustly enriched, and Plaintiff and the class have been damaged. As a direct and proximate result of Defendant's breach of their quasi-contractual obligations, Plaintiff and the Class have been damaged, and Defendant has been unjustly enriched thereby. Plaintiff and the Class are entitled to damages as a result of Defendant's unjust enrichment, including restitution or restitutionary disgorgement of profits in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION
### Quantum Meruit
### Brought By Plaintiff, On Behalf of Himself and the Proposed Class

74. Plaintiff incorporates by reference every allegation contained above.

75. Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

76. As described here, Plaintiff and the Class provided materials and services at Defendant's request or with the acquiescence of Defendant, including, but not limited to, computer equipment and office supplies, phone and internet service, insurance, and advertising.

77. Such materials and services had reasonable market value.

78. Defendant has failed to pay the reasonable market value of such materials and services despite the demands of Plaintiff and the Class.

79. It would be unjust to allow the Defendant to retain the reasonable value of the materials and services provided by Plaintiff and the Class.

80. Plaintiff and the Class are entitled to damages as a result of Defendant's unjust enrichment, including restitution or restitutionary disgorgement of profits in an amount to be proved at trial.

## EIGHTH CAUSE OF ACTION

### Violation of Connecticut Unfair Trade Practices Act ("CUTPA")
### Brought By Plaintiff, On Behalf of Himself and the
### Class Against All Defendants

81. Plaintiff incorporates by reference every allegation contained above.

82. Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

83. As described here, Defendant has used and employed unfair or deceptive methods of competition and unfair or deceptive acts or practices in the conduct of its business. Specifically, Defendant has intentionally misclassified its employees as independent contractors, allowing them to avoid paying taxes on the full amount of its employees' wages, and avoid paying the amount owed to Louisiana's Unemployment Insurance Trust Fund, among other improper benefits.

84. A substantial portion of these unfair and deceptive acts and practices took place in the state of Connecticut, or were directed from the state of Connecticut.

85. Such methods and practices are unfair and deceptive to the extent Defendant is improperly withholding money from the state of Louisiana, and improperly shifting the burden of providing lawful benefits to employees from themselves to taxpayers of Louisiana and the United States.

86. Such methods and practices are unfair and deceptive to the extent that state and federal governments are wrongfully deprived of tax revenue through failure to remit all owed taxes and the increased burden of public services for the alleged independent contractors that would otherwise be borne by Defendant.

87. Such methods and practices are unfair and deceptive to the extent they

provide Defendant a competitive advantage over other similarly situated organizations that properly classify their employees.

88. As a result of the above methods and practices, Defendant proximately damaged Plaintiff by failing to pay him all owed wages and failing to reimburse him for business expenses, resulting in ascertainable losses.

89. Plaintiff and the Class are entitled to damages as a result of Defendant's unfair methods of competition and unfair or deceptive acts or practices.

90. Plaintiff seeks punitive damages, costs, and reasonable attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendant, as follows:

1. For compensatory damages, according to proof, including but not limited to damages for lost income, lost benefits, unreimbursed business expenses, and emotional distress;
2. For double damages pursuant to Conn. Gen. Stat. § 31-72;
3. For restitution and disgorgement of profits;
4. For punitive/exemplary damages;
5. For pre-judgment and post-judgment interest;
6. For costs of suit;
7. For reasonable attorneys' fees; and
8. For all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

[*Attorney signature follows on next page*]

Respectfully submitted:

DATED: June 19, 2019 **SCOTT D. WILSON, APLC**

By: /s/ Scott D. Wilson
Scott D. Wilson (LA SBN 19835)
Scott D. Wilson, APLC
533 Europe Street
Baton Rouge, LA 70802
Telephone: (225) 388-9788
Facsimile: (225) 344-1200
Email: sdwilsonlaw@aol.com

**NICHOLAS & TOMASEVIC, LLP**

Craig M. Nicholas (CA SBN 178444)
(*pro hac vice pending*)
Alex Tomasevic (CA SBN 245598)
(*pro hac vice pending*)
Ethan T. Litney (CA SBN 295603)
(*pro hac vice pending*)
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: elitney@nicholaslaw.org

*Attorneys for Plaintiff*