UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERIC OTTEMAN, On Behalf of Himself     CIVIL ACTION
and the Proposed Class

VERSUS     NO: 19-11291

KNIGHTS OF COLUMBUS     SECTION: T (3)

## ORDER

Before the Court is a Motion to Dismiss filed by Defendant Knights of Columbus.[1] Plaintiff Eric Otteman has filed an opposition.[2] With leave of Court, Defendant filed a reply in support of the Motion to Dismiss.[3] The Motion to Dismiss is directed to Plaintiff's Second Amended Complaint.[4] For the reasons set forth below, the Motion to Dismiss is GRANTED and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

**FACTS AND PROCEDURAL HISTORY**

According to the Second Amended Complaint,[5] Defendant is a Catholic fraternal society based in Connecticut that sells insurance to its members across the country. Plaintiff is a resident of Louisiana. Plaintiff commenced working for Defendant in Texas starting in 2006 as a "Field Agent" ("FA"), the lowest level of agent. He later moved to Louisiana, and in January 2013, he signed a general agent contract ("GA Contract") with Defendant for the Southeast Louisiana territory. The GA Contract, which states that Connecticut law applies, is attached to the Second

---

[1] R. Doc. 55.
[2] R. Doc. 64.
[3] R. Doc. 68.
[4] R. Doc. 38.
[5] R. Doc. 38.

1

Amended Complaint. Plaintiff states the GA Contract was never properly explained by either the Field Director or Defendant's Vice President. The GA Contract explicitly states that Plaintiff is not an employee, but rather an independent contractor

Over the years, Plaintiff states, he became a top-20 General Agent ("GA"). General Agents and Field Agents are primarily paid by commissions on insurance they sell for Defendant. As a GA, Plaintiff was also paid based on commissions of his subordinate FAs, called "overwriting commissions." As a GA, Plaintiff was financially responsible for underperforming subordinates. FAs were permitted to take "draws" against future commissions. Although the funds were advanced by Defendant, Plaintiff under the GA Contract was responsible for the debt. Plaintiff alleges he was also responsible for the costs of doing business in his territory, which were directly deducted or diverted from his commissions, including costs for using computer equipment, supplies, insurance, software, postage, and continuing education, and he asserts he was never reimbursed for such expenses.

Despite his success, Plaintiff claims he was saddled with underperforming agents whom he was unable to vet before hiring, whom he could not fire, and who were drowning him in "draw debt" that he could not modify. In addition, Plaintiff claims, Defendant was hiring even more underperforming agents in order to "swell" its manpower numbers and increase Defendant's ratings as an insurance provider. This benefitted Defendant, Plaintiff claims, because if an agent could not sell enough insurance to cover any draws, Plaintiff as the GA was responsible.

Plaintiff claims he was prevented from exercising independent judgment as to eligible persons from whom to solicit applications for insurance. He provides as an example a Mr. Joe Lombardi, a grandson of Vince Lombardi who attended his church. Plaintiff claims he approached

Mr. Lombardi, who told him he was a member of the Knights of Columbus and to look him up regarding the purchase of an insurance policy. However, when he attempted to do so, the executive assistant to the Defendant's CEO who sent a cease and desist letter to Plaintiff ordering him to stay away from Mr. Lombardi and not to solicit him for insurance. When Plaintiff protested, Defendant's then vice-president called him and told him to back off and move on.

Relevant to Plaintiff's claims, the GA Contract provides in pertinent part:

> Nothing contained in this Agreement shall be construed to create the relationship of employer and employee between the Order and the General Agent….The General Agent shall be free to exercise independent judgment as to the eligible persons from whom applications for insurance will be solicited, and as to the time and place of such solicitation. The general agent shall abide by the rules and procedures established by [Defendant], but such rules and procedures shall not be construed as interfering with the freedom of action of the General Agent as described in this Agreement.

Plaintiff asserts this turned out not to be true and resulted in damages to him.

The GA Contract further states:"The General Agent and the Order shall enter into contracts with Field Agents….in such numbers as may be necessary to keep the sales territory satisfactorily serviced." Plaintiff claims this also was not true, and that Defendant cared only about its manpower numbers and engaged in bad faith injuring his right to receive benefits under the GA Contract, that is, by drowning him in the draw debt of underperforming field agents. Plaintiff claims he never knowingly consented to the level of draw debt he was forced to undertake and could in no way ameliorate. Plaintiff claims he is entitled to all of his owed commissions that have been wrongfully withheld, deducted, or diverted, and all damages resulting from Defendant breaching the contract in bad faith.

Plaintiff has asserted six claims in his Second Amended Complaint.[6] In his first and second causes of action, he seeks unpaid commissions and unreimbursed expenses owed to him under the Connecticut Wage Law, Conn. Gen. Stat. §§ 31-71 and 72. In his third cause of action, Plaintiff asserts Defendant breached the GA Contract under Connecticut law. In his fourth cause of action, Plaintiff asserts Defendant breached the covenant of good faith. In his fifth cause of action, he asserts a claim for recovery under the theory of unjust enrichment. In his sixth cause of action, Plaintiff asserts a claim under the doctrine of quantum meruit. Defendant seeks dismissal of all claims.

## LAW and ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[7] Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.[8] To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings,[10] and the documents attached to the complaint.[11] Therefore, the Court determines that Plaintiff is not entitled to judgment as a matter of law.

A complaint need not contain detailed factual allegations, but it must offer more than mere

---

[6] R. Doc. 38, pp. 13-20.
[7] Fed. R. Civ. P. 12(b)(6).
[8] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).
[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).
[10] *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004).
[11] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[12] The complaint is construed in the light most favorable to plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in plaintiff's favor.[13] On the other hand, courts may not rely on "legal conclusions that are disguised as factual allegations."[14] If factual allegations are insufficient to raise a right to relief above the speculative level, the claim should be dismissed.[15]

With regard to Causes of Action I and II, Defendant asserts the Connecticut Wage Law does not apply to Plaintiff, and therefore his claims fail. Defendant argues that the Connecticut Wage Law has no extra-territorial effect and therefore does not apply to Plaintiff. Even if the wage laws do apply, Defendant contends that Plaintiff does not allege that Defendant actually miscalculated any commissions or unlawfully failed to pay expenses in derogation of the GA Contract, and so he does not state a cognizable statutory claim. Plaintiff counters that, under the Connecticut law, employers are prohibited from withholding or diverting any portion of an employee's wages unless the employer is required or empowered to do so by state or federal law or the employer has written authorization from an employee for deductions on a form approved by the labor commissioner.[16] Here, he argues, the deductions were not made pursuant to a form approved by the commissioner.

The question for the Court then is whether Plaintiff is an employee under Connecticut law.

---

[12] *Iqbal*, 556 U.S. at 678.
[13] *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (*citing Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).
[14] *Jeanmarie v. United States*, 242 F.3d 600, 603 (5th Cir. 2001) (*citing Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).
[15] *Twombly*, 550 U.S. at 555.
[16] R. Doc. 64, pp. 4-5.

Defendant argues that Plaintiff was not an employee *in Connecticut*, and that it is well-settled that courts decline to extend state wage and hour laws to employees residing and working outside that state.[17] Plaintiff contends that the Contract itself references Connecticut law, and that Defendant should not be allowed to use its choice of law clause as both a sword and a shield.[18] However, the Court chooses to follow two relevant cases cited by Defendant, even though Plaintiff asks this Court to ignore them. In *Kubas v. Hartford Financial Services Co.*, 27 Conn. L. Rptr. 565, 2000 WL 1170237, *2 (Conn Super. July 19, 2000), the Connecticut Superior Court held: "Individuals employed outside the state of Connecticut are subject to wage payment laws of he states in which they are employed and are not afforded the protection of the Connecticut [wage] statue." In a subsequent case, a federal district court in Ohio ruled that Knights of Columbus Field Agent based n Ohio could not pursue a Connecticut wage claim against the Order, even though the parties' agreement stated that their contractual agreement was government by Connecticut law. *Osborn v. Knights of Columbus*, No. 04-cv-7486, 2005 WL 469602, *3 (N.D. Ohio Mar. 1, 2005). Like here, that court was confronted with the choice of law issue. The court explained: "State wage and hour statutes govern employees in the state in which they are employed. {Plaintiff's] territory as a field agent of [the Order] was in Ohio, which has its own wage and hour statutes governing persons employed in this state. Thus, the Ohio, rather than the Connecticut, statute applies to employment (and employees) in Ohio." *Id.*

      This Court finds that Plaintiff is not an employee in Connecticut and thus the Connecticut wage laws do not apply. The GA Contract is to be "governed by and interpreted in accordance

---

[17] R. Doc. 55-1, p. 6 (collecting cases).
[18] R. Doc. 64, p. 7.

with the laws of the State of Connecticut law."[19]  Under Louisiana choice of law rules, such language governs only contractual disputes, and thus not a statutory claim.[20] Accordingly, because Plaintiff is not an employee of Defendant in Connecticut, his claims for sums under the Connecticut Wage Law will be dismissed.

With regard to Cause of Action III, Defendant asserts that Plaintiff has failed to state a claim for breach of contract because all of Defendant's actions were permitted under the Contract. Plaintiff asserts that Defendant wrongfully withheld commissions and made deductions for expenses, interfered with his engagement of FAs, and interfered with his solicitation of a potential customer in his territory. However, the Court has reviewed the Contract and Plaintiff's allegations and agrees with Defendant that Plaintiff has failed to connect his allegations to any specific provisions of the Contract. With regard to the incident involving Mr. Lombardi, Defendant points out that, under the GA Contract, Defendant is ultimately responsible for issuing any insurance policies. Defendant cites the language of the Contract that provides that "the General Agent … shall have no authority to bind the Order ro issue any insurance policy." Accordingly, Plaintiff's claim of a breach of contract must also be dismissed.

With regard to Cause of Action IV, Defendant argues that Plaintiff's claim for breach of covenant of good faith and fair dealing is subject to dismissal under Connecticut Law. Under Connecticut Law, An action for breach of the covenant of good faith and fair dealing requires proof of three essential elements: "(1) that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; (2) that the defendant

---

[19] R. Doc. 38, Exhibit C.
[20] *See, e.g., Kreger v. Gen Steel Corp.*, No. 07-cv-575, 2010 WL 2902773 (E.D. La. July 19, 2010).

engaged in conduct that injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract; and (3) that when committing the acts by which it injured the plaintiff's right to receive under the contract, the defendant was acting in bad faith.[21] However, the Court agrees with Defendant that allegations of bad faith alone are insufficient, but must be tied to an alleged breach of a specific contract term. "[B]ecause the covenant of good faith and fair dealing 'requires that neither party to a contract do anything that will injure the right of the other to receive the benefits of the agreement,' it is not implicated by conduct that does not impair contractual rights'"[22] As Defendant points out, the Contract specifically provided that Plaintiff's commissions were subject to offset of any amounts paid as a draw against future commissions and that the GA and Defendant shall enter into contracts with Field Agents in such numbers as may be necessary to keep the sales territory satisfactorily serviced.[23] The Court finds that Plaintiff has failed to state a claim for breach of covenant of good faith and fair dealing because he cannot tie his claims to any breach of a specific contract term. Accordingly, the claim must be dismissed.

With regard to Plaintiff's unjust enrichment claim, Cause of Action No. V, the Court agrees that it should also be dismissed. Under Louisiana law, a claim of unjust enrichment cannot be plead alongside another potential remedy.[24] Similarly, Plaintiff's assertion of an express contract also would defeat his claim for unjust enrichment under Connecticut law.[25] Accordingly, Plaintiff's

---

[21] *Andersen v. Governor and Co. of the Bank of Ireland*, 2011 WL 6001621, at *6 (D. Conn. Nov. 30, 2011).
[22] *Capstone Bldg Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 795, 67 A.3d 961, 987 (2013).
[23] *See* R. Doc. 38, Ex. C.
[24] *Shell Offshore, Inc. v. Eni Petro. US LLC*, No. 16-cv-15537, 2017 WL 3582486, *8 (E.D. La. Aug. 18, 2017.
[25] *Meaney v. Conn. Hosp. Ass'n, Inc.*, 250 Conn. 500, 517-18, 735 A.2d 813, 822-23(1999).

claim of unjust enrichment will also be dismissed.

Finally, with regard to Cause of Action VI, Defendant asserts that Plaintiff's quantum meruit claim also be dismissed. Louisiana law does not recognize quantum meruit as a cause of action.[26] Similarly, Connecticut law recognizes quantum meruit only "in the context of an otherwise enforceable contract."[27] Defendant points out that Plaintiff has asserted that the GA Contract is enforceable, and thus he may not assert a claim of quantum meruit. Accordingly, this claim must be dismissed.

## CONCLUSION

**IT IS ORDERED** that the Motion to Dismiss is GRANTED, and Plaintiff's claims are hereby dismissed without prejudice. Plaintiff is allowed 14 days in which to amend his complaint. Failure to do so will result in dismissal of his claims with prejudice.

New Orleans, Louisiana, this 30th day of September 2020.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[26] *See, e.g., SMP Sales Management, Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 n. 4 (5th Cir, 1992).
[27] *Walpole Woodworkers, Inc. v. Manning*, 307 Conn. 582, 587, 57 A.3d 730, 733 (2012).