UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIC OTTEMAN, On Behalf of Himself And the Proposed Class | CIVIL ACTION |
| VERSUS | |
| KNIGHTS OF COLUMBUS | NO: 19-11291 SECTION: T (3) |

## ORDER

Before the Court is a Motion to Dismiss filed by Defendant Knights of Columbus.[1] Plaintiff Eric Otteman filed an opposition.[2] With leave of Court, Defendant filed a reply in support of the Motion to Dismiss.[3] Defendant's Motion comes in response to Plaintiff's Third Amended Complaint,[4] which Plaintiff filed following the Court's order dismissing the Plaintiff's Second Amended Complaint.[5] For the reasons set forth herein, the Motion to Dismiss is GRANTED.

## FACTS AND PROCEDURAL HISTORY

The facts alleged in the Third Amended Complaint remain relatively unchanged from those of the Second Amended Complaint.[6] Because the prior order recounted the facts in appropriate detail,[7] the Court now offers a brief factual summary for brevity purposes. Defendant is a Catholic fraternal society based in Connecticut that sells insurance to its members across the country. Plaintiff, a resident of Louisiana, began working for Defendant in 2006 as a "Field Agent" (FA), an entry level insurance salesman. In 2013, Plaintiff moved to Louisiana and signed a General

---

[1] R. Doc. 114.
[2] R. Doc. 115.
[3] R. Doc. 127.
[4] R. Doc. 111.
[5] R. Doc. 103.
[6] R. Doc. 38.
[7] R. Doc. 103. *Otteman v. Knights of Columbus*, No. CV 19-11291, 2020 WL 5819916 (E.D. La. Sept. 30, 2020).

1

Agent Contract (GA Contract), thereby becoming a recruiter and manager for FAs within the Southeast Louisiana territory.

In the following years, Plaintiff became a top-20 General Agent ("GA"), drawing commissions on his sales and those of his subordinate FAs. As a GA, Plaintiff was financially responsible for underperforming FAs, including "draws," a form of advance payment that FAs could elect against future commissions. Under the terms of the FA and GA Contracts, Defendant could satisfy FA debt by reducing Plaintiff's commission payments. Despite his successes, Plaintiff became increasingly dissatisfied with Defendant for purported lack of autonomy, underperforming agents, and increasing FA debt for which he was held responsible.

Plaintiff eventually resigned from his position and this suit followed. On September 30, 2020, this Court dismissed Plaintiff's Second Amended Complaint without prejudice.[8] Plaintiff then filed a Third Amended Complaint on October 15, 2020, to which Defendant filed another Motion to Dismiss for Failure to State a Claim.[9] This time around, Plaintiff repeats the six claims from his Second Amended Complaint with modification and one new claim. Plaintiff reasserts claims for violations of the Connecticut Wage Law (Causes I and II) and breach of contract (Cause III). The breach of contract claim includes an additional allegation under the FA contract and an alternative allegation of unconscionability. Plaintiff also reasserts claims under the covenant of good faith (Cause IV), unjust enrichment (Cause V), and quantum meruit (Cause VI). Finally, Plaintiff asserts a novel alternative claim alleging violations of the Louisiana Wage Payment Statutes (Cause VII). Defendant seeks dismissal of all claims.

---

[8] *Id*.
[9] R. Doc. 114.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that a plaintiff's action may be dismissed "for failure to state a claim upon which relief can be granted."[10] Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.[11] To survive a 12(b)(6) motion, the facts must not be merely conceivable but plausible, containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12] In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings,[13] and the documents attached to the complaint.[14]

A complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[15] Where a complaint is comprised of "naked assertion[s] devoid of 'further factual enhancement,'" the pleading has failed to comply with the requirements of Rule 8.[16] On review, however, the Court construes the complaint in the light most favorable to plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in plaintiff's favor.[17] If factual allegations are insufficient to raise a right to relief above the speculative level, the claim should be dismissed.[18]

Plaintiff's Third Amended Complaint aims to cure deficiencies that mandated previous dismissal. As for Causes I and II, Plaintiff reasserts his claims that Defendant wrongfully withheld

---

[10] Fed. R. Civ. P. 12(b)(6).
[11] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).
[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).
[13] *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004).
[14] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[15] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).
[16] *Id*.
[17] *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (citing *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).
[18] *Twombly*, 550 U.S. at 555.

commissions and failed to pay for his expenses in violation of Connecticut wage law.[19] The Court need not address the merits of those claims because it remains convinced under its previous analysis that Plaintiff is precluded from accessing Connecticut statutory remedies under the GA Agreement's narrow choice of law provision.[20] Plaintiff is not an employee under Connecticut's wage law because of his employment here in Louisiana. Indeed, the Plaintiff's Third Amended Complaint attests that "Plaintiff is a Louisiana citizen" for diversity purposes, and the General Agent Agreement—the contract giving rise to this dispute—delineates Plaintiff's territorial responsibility as "the Southeast Louisiana Territory."[21] Because Plaintiff is not an employee *in* Connecticut and non-Connecticut workers are "not afforded the protection of the Connecticut [wage payment] statute,"[22] Causes I and II are dismissed.

Under Cause III, Breach of Contract, there are two contracts at issue: The General Agent Agreement (GA Agreement)[23] and the Field Agent Agreement (FA Agreement).[24] The Court previously addressed Plaintiff's breach claims relating to the GA Contract in the September 30 Order. Plaintiff has repeated those same claims within the Third Amended Complaint while also adding a separate claim under the FA Contract, and in the event the Court finds there to be no breach, the Plaintiff states an alternative claim that the GA Agreement is "substantially and procedurally unconscionable."[25]

As to the GA Agreement, Plaintiff reasserts that Defendant wrongfully withheld commissions and made deductions for expenses, interfered with his contracted autonomy over

---

[19] Conn. Gen. Stat. §§ 31-71e, 31-72.
[20] *See* R. Doc. 111-2, page 4. ("This agreement shall be governed by and interpreted in accordance with the laws of the State of Connecticut." Without more specificity, the choice of law provision here governs only the contract).
[21] *See* R. Doc. 111, pages 1, 5.
[22] *Kubas v. Hartford Financial Services Co.*, 27 Conn. L. Rptr. 565, 2000 WL 1170237, at *2 (Conn. Super. July 19, 2000).
[23] R. Doc. 111-2.
[24] R. Doc. 111-1.
[25] R. Doc. 111, p. 21.

FAs, and interfered with his solicitation and procurement of a potential customer in his territory.[26] Regarding the FA Agreement, Plaintiff alleges Defendant breached the agreement "by offsetting amounts due thereunder by his Field Agents' draw debt without being authorized in any way by any contractual provisions."[27]

Upon review of these alleged breaches, the amended complaint fails to identify an action that violates the terms of either contract. Plaintiff's new claim under the FA Agreement fails because the contract specifically provides that "any commissions due are subject to payment of [Plaintiff's] indebtedness to the Order."[28] As for the GA Agreement, Plaintiff attempts to connect his allegations to specific provisions of the contract in accordance with the Court's previous Order.[29] To be clear, the allegations made by Plaintiff must properly claim that Defendant's actions violated specific contractual provisions. The repeating of allegations offers no recourse for the Court in this posture—taking well-plead allegations to be true—when the allegations are expressly *granted* by the contract's provisions. Thus, as the practices complained of by Plaintiff are set forth clearly within the GA Agreement, the Court agrees that Plaintiff's claims fail as a matter of law. Plaintiff's alternative claim for unconscionability is also dismissed, as the Court deems the contract enforceable, thus rendering the alternative claim moot.

As for Cause of Action IV, under which Plaintiff alleges Defendant breached the covenant of good faith and fair dealing, the Court dismisses the claim because of the continued absence of breach to a specific contract term. As previously explained, the covenant of good faith and fair dealing is "not implicated by conduct that does not impair contractual rights."[30] Though the Court

---

[26] R. Doc. 115.
[27] R. Doc. 111, ¶ 89.
[28] R. Doc. 111-2, § 7 (c).
[29] R. Doc. 104, p. 7.
[30] *Capstone Bldg Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 795, 67 A.3d 961, 987 (2013).

5

grants dismissal on the aforementioned breach claims, the nature of the contractual provisions between the parties does not go unnoticed. Nevertheless, these contracts are governed by Connecticut law, which strongly favors free contracting regardless of whether a contract is made wisely.[31] Connecticut courts enforce contracts as written and, as we are bound here, "Courts do not unmake bargains unwisely made."[32] For these reasons, Counts III and IV are dismissed.

Turning to Counts V and VI, Plaintiff once again submits alternative pleadings under quasi-contractual theories of unjust enrichment and quantum meruit. Regarding Plaintiff's unjust enrichment claim, neither Louisiana nor Connecticut permits a claim for unjust enrichment under the facts and circumstances submitted here. Under Louisiana law, unjust enrichment is only available to "fill a gap in the law where no express remedy is provided."[33] Where a claim is based on a relationship controlled by an enforceable contract, unjust enrichment is precluded.[34] Connecticut does allow alternative and even contradictory pleadings, including unjust enrichment, but Plaintiff's incorporation "by reference of every allegation contained above" in Count V once again contradicts and therefore precludes the alternative claim.[35] As the Court finds the existence of an enforceable contract, Plaintiff's unjust enrichment claim is dismissed.

As for Plaintiff's quantum meruit claim, it too must be dismissed. Under Louisiana law, quantum meruit is not recognized as a cause for recovery, "but is only used as a measure of compensation or price in quasi-contract or when none is stated in a contract."[36] Likewise,

---

[31] *Geysen v. Securitas Security Services USA, Inc.*, 322 Conn. 385, 398, 142 A.3d 227 (2016).
[32] *Id*.
[33] *Shell Offshore, Inc. v. Eni Petro. US LLC*, No. 16-cv-15537, 2017 WL 3582486, *7 (E.D. La. Aug. 18, 2017) (quoting *Perez v. Utility Constructors, Inc.*, 2016 WL 5930877, at *1 (E.D. La. Oct. 12, 2016).
[34] *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407 (5th Cir. 2004) (*citing Edwards v. Conftronto*, 636 So. 2d 901, 907 (La. 11/29/93)).
[35] R. Doc. 111, p. 23. *See J&N Elec., Inc. v. Notkins*, No. CV085020144, 2009 WL 1607591, at *2 (Conn. Super. Ct. May 20, 2009) (holding that plaintiff pleading unjust enrichment in the alternative is not accomplished by incorporating into the separate count all the allegations of an express contract).
[36] *SMP Sales Management, Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (quoting *Morphy, Makofsky & Masson v. Canal Place 2000*, 538 So. 2d 569, 574–75 (La.1989)).

Connecticut recognizes quantum meruit only "in the context of an otherwise unenforceable contract."[37] Here, an enforceable contract exists between the parties, perhaps most readily apparent by Plaintiff's attaching both contracts under which he seeks enforcement.[38] Plaintiff has not explained how the contract is unenforceable but has instead repeatedly argued *in favor* of the agreement's terms. Furthermore, as referenced above, while Connecticut does allow alternative pleadings in separate counts regardless of their contradictions, "this is not accomplished by incorporating…all the allegations of an express contract. Such a complaint does not involve alternate pleading, but involves legally inconsistent pleading."[39] Upon reviewing Plaintiff's Third Amended Complaint, each cause of action begins with the following: "Plaintiff incorporates by reference every allegation contained above."[40] By doing so, each count incorporates allegations previously stated, namely, the existence of an enforceable contract, thereby violating the requirement that alternative theories be pleaded in separate counts.[41] Both Counts V and VI are dismissed.

Finally, should the Court dismiss Causes I and II under Connecticut law, Plaintiff submits a novel alternative claim under the Louisiana Wage Payment Statutes,[42] claiming Defendant failed to pay commission fees following his resignation as mandated by the General Agent Agreement. More specifically, Plaintiff posits that by reducing Plaintiff's commissions by the amount of draw debt owed—which effectively garnishes commission payments until the debt is satisfied—defendant's reductions equated to an unlawful forfeiture of wages. [43]

---

[37] *Warpole Woodworkers, Inc. v. Manning*, 307 Conn. 582, 587, 57 A.3d 730, 733 (2012).
[38] *See* R. Doc. 111-1, 111-2.
[39] *J&N Elec., Inc. v. Notkins*, No. CV085020144, 2009 WL 1607591, at *2 (Conn. Super. Ct. May 20, 2009).
[40] *See*, *e.g.*, R. Doc. 111, p. 18-24.
[41] *See Burke v. Boatworks, Inc.,* No. CV044001838S, 2005 WL 1971821, at *1 (Conn. Super. Ct. July 26, 2005) (granting motion to strike unjust enrichment claim based upon plaintiff incorporating allegations of breach of express contract between plaintiff and defendant into claim).
[42] La.R.S. 23:631 et seq.
[43] R. Doc. 111, p. 26.

Defendant argues that this claim fails as a matter of law under the express language of Plaintiff's General Agent Contract and the Louisiana statute.[44] The Court agrees. As previously held, "[T]he Contract specifically provided that Plaintiff's commissions were subject to offset of any amounts paid as a draw against future commissions."[45] Further, while Louisiana does indeed charge employers with a duty to satisfy wages payable to departing employees, Defendant correctly notes that the statutory language provides that workers are to be paid "the amount then due under the terms of their employment."[46] In doing so, the statute ensures payment owed is made to employees following resignation or termination, thereby protecting workers from retaliation when a working relationship ends. Here, Plaintiff's commissions were always subject to offset in accordance with the express terms of the General Agent Agreement, and thus in accordance with the terms of employment. Consequently, Plaintiff's claim under the Louisiana Wage Payment statute is dismissed.

## CONCLUSION

IT IS ORDERED that the Motion to Dismiss is GRANTED, and Plaintiff's claims are hereby dismissed with prejudice.

New Orleans, Louisiana, this 12th day of February, 2021.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[44] R. Doc. 114-1, p. 23.
[45] R. Doc. 103, at 4.
[46] La.R.S. 23:631 et seq.